Argued May 22, reversed and remanded September 10, petitioners'
petition for reconsideration denied October 15, respondents'
petition for reconsideration denied October 29, petitions
for review denied December 10, 1975

LAKESIDE, *Petitioner, v.* PUBLIC WELFARE
DIVISION ᴇᴛ ᴀʟ (No. 2-25-OZA 897-6), *Respondents.*

BACON, *Petitioner, v.* PUBLIC WELFARE
DIVISION ᴇᴛ ᴀʟ (No. 2-25-SZJ 904-4), *Respondents.*

TUCKER, *Petitioner, v.* PUBLIC WELFARE
DIVISION ᴇᴛ ᴀʟ (No. 2-25-JEC 702-9), *Respondents.*

GABIN, *Petitioner, v.* PUBLIC WELFARE
DIVISION ᴇᴛ ᴀʟ (No. 2-25-MYV 609-5), *Respondents.*

KNIGHT, *Petitioner, v.* PUBLIC WELFARE
DIVISION ᴇᴛ ᴀʟ (No. 2-25-MYH 058-4), *Respondents.*

MARCHANT, *Petitioner, v.* PUBLIC WELFARE
DIVISION ᴇᴛ ᴀʟ (No. 2-25-MXA 495-5), *Respondents.*

GAYLORD, *Petitioner, v.* PUBLIC WELFARE
DIVISION ᴇᴛ ᴀʟ (No. 2-25-SZM 829-0), *Respondents.*

TAYLOR, *Petitioner, v.* PUBLIC WELFARE
DIVISION ᴇᴛ ᴀʟ (No. 2-25-MXL 416-9), *Respondents.*

539 P2d 1132

See also, Or App 539 P2d 1137.

*Gary Roberts,* Legal Aid Service—Multnomah Bar Association, Inc., Portland, argued the cause and filed the brief for petitioners.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

SCHWAB, C. J.

Petitioners appeal from orders of a hearing officer of the Public Welfare Division that had the effect of reducing the amount of food stamp benefits they receive. The issues raised involve the validity of the administrative regulations that produced this result and interpretation of some of those regulations. We hold the regulations valid, but agree with petitioners' contentions that they were incorrectly interpreted by the hearing officer.

Petitioners were receiving food stamp benefits at the time they became students. Their education is being supported by various forms of grants, scholarships and student loans. Petitioners complain about the effect that these scholarships, etc., have on their food stamp benefits.

Under the food stamp program, eligible households receive coupons that may be used to purchase food at participating retail stores. Households receive coupons worth the cost of a nutritionally adequate diet as determined by the Secretary of Agriculture. Households purchase this coupon allotment, paying the amount of money supposedly available for the purchase of food. Thus, the program subsidizes a participating household's food purchases to the extent of the difference between the presumed cost of an adequate diet and the money presumed available to buy food.

More specificially, the relevant regulations create the following process: (1) determine a household's "income"[1]; (2) determine a household's permissible

---

[1] "Monthly income means all income which is received or anticipated to be received during the month. To compute maximum monthly income for purposes of determining

"deductions"[②]; (3) subtract "deductions" from "in-

eligibility, income shall mean any of the following but is not limited to:

"(a) All compensation for services performed as an employee;

"(b) Net income from self-employment, which shall be the total gross income from such enterprise (including the total gain received from the sale of any capital goods or equipment related to such enterprise), less the cost of producing that income. The following shall not be considered as the cost of producing income:

"(1) Payments on the principal of the purchase cost of income-producing real estate. Any payments of principal, interest, and taxes on the home shall be subject to subdivision (iii)(g) of this subparagraph;

"(2) Payments on the principal of the purchase cost of capital assets, equipment, machinery, and other goods;

"(3) Depreciation; and

"(4) A net loss sustained in any previous period;

"(c) The total amount of a roomer's payment to the household;

"(d) The total payment received from each boarder less a deduction for each boarder of the value of the monthly coupon allotment for a one-person household;

"(e) Payments received as an annuity; pension; retirement or disability benefit; veterans', workmen's or unemployment compensation; and old-age, survivors, or strike benefit;

"(f) Payments received from federally aided public assistance programs, general assistance programs, or other assistance programs based on need;

"(g) Payments received from Government-sponsored programs such as Agricultural Stabilization and Conservation Service programs, the Work Incentive Program, or Manpower Training Program;

"(h) Payments, except those for medical costs, made on behalf of the household by a person other than a member of the household;

"(i) Cash gifts or awards (except as provided in subdivision (ii)(e) of this subparagraph) for support, maintenance, or the expenses of education.

"(j) Scholarships, educational grants (including loans on which repayment is deferred until completion of the recipient's education), fellowships, and veterans' educational benefits;

"(k) Support and alimony payments; and

come" to determine "net food stamp income." This net

"(l) Rents, dividends, interest, royalties, and all other payments from any source whatever which may be construed to be a gain or benefit.

"(m) The actual value of housing received from an employer by members of a household as income in kind, in lieu of or supplemental to household income, not to exceed $25 per month. No value is to be assigned to housing received as payment in kind which has been condemned or declared substandard under Federal, State, or local housing codes." 7 CFR § 271.3 (c)(1)(i) (1975).

②

"Deductions for the following household expenses shall be made (this list is inclusive and no other deductions from income shall be allowed):

"(a) Ten percentum of income from compensation for services performed as an employee or training allowance not to exceed $30 per household per month. This deduction shall be made before the following deductions.

"(b) Mandatory deductions from earned income which are not elective at the option of the employee such as local, State, and Federal income taxes, social security taxes under FICA, and union dues;

"(c) Payments for medical expenses, exclusive of special diets, when the costs exceed $10 per month per household;

"(d) The payments necessary for the care of a child or other persons when necessary for a household member to accept or continue employment, or training or education which is preparatory for employment.

"(e) Unusual expenses incurred due to an individual household's disaster or casualty losses which could not be reasonably anticipated by the household;

"(f) Tuition and mandatory fees assessed by educational institutions (no deductions shall be made for any other education expenses such as, but not limited to, the expense of books, school supplies, meals at school, and transportation).

"(g) Court-ordered support and alimony payments; and

"(h) Shelter costs in excess of 30 percentum of the household's income after the above deductions. The State agency may develop, subject to FNS approval, standard utility allowances for use in calculating shelter costs: *Provided,* That the State agency must use actual utility costs if the household so requests and can verify such costs; and *Provided further,* That the State agrees to make annual reviews and adjust the standard, as necessary, to reflect deviations revealed by quality control, State agency surveys of utility company rates, or any other methods developed by the State and approved by FNS." 7 CFR § 271.3 (c)(1)(iii) (1975).

figure is then used to determine eligibility to participate in the program and amount of benefits; that is, the coupon allotment and its cost to the household.

In petitioners' cases, 7 CFR § 271.3(c)(1)(i)(j) (1975) requires inclusion of their scholarships, etc., in the calculation of their "income":

"Monthly income means all income which is received or anticipated to be received during the month. To compute maximum monthly income for purposes of determining eligibility, income shall mean any of the following but is not limited to:
"* * * * *

"Scholarships, educational grants (including loans on which repayment is deferred until completion of the recipient's education), fellowships, and veterans' educational benefits;".

7 CFR § 271.3(c)(1)(iii)(f) (1975) permits a deduction of the tuition and mandatory fees petitioners were paying as students:

"Deductions for the following household expenses shall be made (this list is inclusive and no other deductions from income shall be allowed):
"* * * * *

"Tuition and mandatory fees assessed by educational institutions (no deductions shall be made for any other education expenses such as, but not limited to, the expense of books, school supplies, meals at school, and transportation)."

Each petitioner received scholarships, etc., that were larger than their tuition and mandatory fee expenses. Under the regulations, this had the result of reducing their food stamp benefits. To illustrate, if a member of a household received a $1,000 scholarship and paid tuition of $750, the $1,000 would be included in the calculation of "income," the $750 would be allowed as a "deduction," increasing the household's

"net food stamp income" by $250, and correspondingly reducing food stamp benefits.

## I

■ Petitioners argue this regulatory scheme conflicts with the Food Stamp Act of 1964, 7 USC § 2011-2026. The principal basis of this argument is that it was stipulated that here *all* of the scholarship, etc., benefits being received by petitioners are being used for educational expenses. Thus, even though petitioners do not actually have any additional money available for the purchase of food, their food stamp benefits have been reduced.

While the results produced here by the regulatory scheme are arguably harsh, we perceive no conflict with the Food Stamp Act. Petitioners rely on the declaration of policy in 7 USC § 2011: "* * * a food stamp program is herein authorized which will permit low-income households to purchase a nutritionally adequate diet through normal channels of trade." Yet this declared policy must be considered together with the balance of the Act. Other than a very general statutory statement of eligibility standards, 7 USC § 2014, and benefit levels, 7 USC § 2016, the inescapable point that emerges from a reading of the Act is that authority "to formulate and administer a food stamp program" is delegated to the Secretary of Agriculture. 7 USC § 2013(a). Indeed, the Government Printing Office requires only seven pages to publish the very general statutory language in the United States Code, but requires 61 pages to publish the complex implementing regulations in the Code of Federal Regulations. Given this division of responsibility between Congress and the Secretary of Agriculture, explicitly created by Congress, we do not find federal regulations to be in conflict with the very general statement of policy in the Food Stamp Act.

Petitioners also argue there is a conflict between the regulatory scheme and 7 USC § 2014(c) which requires food stamp recipients "to register for employment at a State or Federal employment office" but exempts "bona fide students" from this requirement. Petitioners contend this amounts to a congressional statement that students are entitled to participate in the food stamp program. But students are participating equally, subject to income limitations mandated by 7 USC 2014(a) that are applicable to all recipients. True, only students have income in the form of scholarships; but it is the fact of having income, not the fact of student status, that is significant under the regulations.[9]

## II

■ There are three interpretation problems. The first is whether the hearing officer was correct in ruling that the value of books and educational supplies selected by certain petitioners but paid for by the Department of Vocational Rehabilitation directly to the vendor should be computed as part of the income of those petitioners. The relevant regulation provides that income does not include "[a]ny gain or benefit which is not in money * * *." 7 CFR § 271.3(c)(1) (ii)(c) (1975).

Interpreted in light of the food stamp program's purpose to provide low-income households with the opportunity to purchase a nutritionally adequate diet, the plain meaning of the regulation excludes from

[9] Moreover, rather than discriminating against all students, as apparently contended by petitioners, the regulations actually discriminate in favor of students paying their own tuition or receiving scholarships that are less than their tuition. To illustrate, if a student and a nonstudent each had $100 per month in income, and the student paid tuition of $75 per month, the student, having been allowed the tuition deduction, would have a net food stamp income of $25 and receive more benefits, while the nonstudent would have a net food stamp income of $100 (disregarding other deductions) and receive less benefits.

the calculation of income any benefit received that could not be used for food purchases. Petitioners' benefits in the form of credit for book purchases cannot be used for food purchases. Petitioners receive the articles, and the articles are not transformed into money benefits merely because the petitioners are allowed to exercise some limited choice in their selection. The hearing officer incorrectly interpreted 7 CFR § 271.3 (c)(1)(ii)(c) (1975) and the corresponding state regulation, resulting in an incorrect calculation of the income of four of the petitioners.

The other interpretation problems involve the training-allowance deduction, which permits a deduction from income equal to:

"Ten per centum of income from compensation for services performed as an employee or training allowance not to exceed $30.00 per household per month." 7 CFR § 271.3(c)(1)(iii)(a) (1975).

The regulations define a training allowance as follows:

"* * * payments made on behalf of or received by a household member from the Work Incentive Program, Manpower Development Programs or similar State or local government-sponsored vocational rehabilitation programs." 7 CFR § 270.2(yy) (1975).

The hearing officer concluded that Department of Vocational Rehabilitation grants and work-study earnings received by some of the petitioners were training allowances, but that all other forms of student aid, i.e., loans and scholarships, received by other petioners were not training allowances. The issue is whether these other sources of public financial support for students are included within the phrase "similar State or local government-supported vocational rehabilitation programs."

■ The regulation is patently ambiguous, and we find neither anything that indicates the intent of the

draftsmen nor prior judicial constructions. The regulation does not limit the deduction to persons who receive aid only from specific programs, as the hearing officer recognized by treating work-study earnings as a training allowance. No reason is apparent for the inclusion of work-study earnings and the exclusion of student loans, state scholarships, and local scholarships. We cannot believe the regulation intended to create a distinction based solely upon the ways in which the various states allocate responsibility for administering student-aid and job-training programs among their various administrative agencies. We conclude that all petitioners were entitled to a training allowance deduction.

The final question is the amount of the available training-allowance deduction. The hearing officer applied 7 CFR § 271.3(c)(1)(iii)(a) (1975) to grant a deduction from income equal to ten percent of petitioners' training allowances. Petitioners claim that the regulation should be interpreted to grant a deduction equal to ten percent of income received from employment *or* a deduction equal to the training allowance, not exceeding $30 per month.

Again, we find the regulation ambiguous. It is unclear whether the ten percent limitation applies only to income earned from employment, or also to money received as a training allowance. The apparent purpose of the regulation is to enable food stamp recipients to meet the hidden costs of employment or education. The deduction is "intended to cover those expenses * * * such as transportation, meals away from home, special clothing and other incidentals necessary for such employment or training." Manual of Certification and Issuance Section Operations: Food Stamp Program § 2505.1(3) (1975).

■ Income from employment is generally considerably larger than the public assistance grants for edu-

cational expenses. Thus, the deduction of ten percent of earned income would bear a reasonable relation to expenses incidental to employment, but the deduction of only ten percent of a training allowance would not bear any reasonable relation to expenses incidental to education. Given that the purpose of the regulation is to enable recipients of training allowances to meet some of the costs of education other than tuition, we interpret 7 CFR § 271.3(c)(1)(iii)(a) (1975) to provide for a deduction equal to a training allowance, not exceeding $30 per month.

Reversed and remanded.